UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYDEE REYNOSO, an individual, and JESUS GALLEGOS, an individual,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company, and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | No. 2:25-cv-08412-AJR<br><br>**MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND (DKT. 13)** |

## I.

## INTRODUCTION

On February 13, 2025, Plaintiffs Haydee Reynoso and Jesus Gallegos (together, "Plaintiffs") filed a complaint (the "Complaint") alleging violations of California's Song-Beverly Consumer Warranty Act and the federal Magnuson-Moss Warranty Act in the Los Angeles County Superior Court against Defendants General Motors LLC, Montebello Auto Group LLC, and DOES 1 through 10. (Dkt. 1-1.) On February 21, 2025, Plaintiffs effectuated service of the Complaint on Defendant General Motors LLC ("Defendant"). (Dkt. 13 at 2.) On March 28, 2025,

1  Plaintiffs filed a First Amended Complaint ("FAC") naming only Defendant and
2  Does 1 through 10 as defendants. (Dkt. 1-2.) On July 3, 2025, Defendant filed an
3  Answer in the Los Angeles County Superior Court. (Dkt. 1-3.) On September 5,
4  2025, Defendant filed a Notice of Removal of the action to the U.S. District Court
5  for the Central District of California (the "Notice of Removal"). (Dkt. 1.)

6        On October 3, 2025, Plaintiffs filed a Motion to Remand (the "Motion to
7  Remand") this action to the Los Angeles County Superior Court. (Dkt. 13.) On
8  October 15, 2025, Defendant filed an Opposition to the Motion to Remand (the
9  "Opposition"). (Dkt. 14.) Plaintiffs had until October 22, 2025 to file an optional
10 reply, but declined to do so.

11       The parties have consented to the jurisdiction of the undersigned U.S.
12 Magistrate Judge. (Dkt. 8.) For the reasons stated below, the Court DENIES
13 Plaintiffs' Motion to Remand. (Dkt. 15.) Because the Court has determined that the
14 Motion to Remand must be denied, the Court will also issue a separate scheduling
15 order.

16
17                             II.
18                    LEGAL STANDARD

19       Removal of a case from state court to federal court is governed by 28 U.S.C.
20 § 1441, which provides in relevant part that "any civil action brought in a State court
21 of which the district courts of the United States have original jurisdiction, may be
22 removed . . . to the district court of the United States for the district and division
23 embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal
24 courts have original subject matter jurisdiction where an action presents either a
25 federal question under 28 U.S.C. § 1331 or diversity of citizenship under 28 U.S.C.
26 § 1332. Generally, a court has diversity jurisdiction only when there is complete
27 diversity of citizenship among adverse parties and the amount in controversy
28 exceeds $75,000. See 28 U.S.C. § 1332(a). Remand to state court may be ordered

for lack of subject matter jurisdiction or any defect in the removal procedure. See 28 U.S.C. § 1447(c).

To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in favor of remand. See Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005); see also Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006) ("It is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal quotation marks and brackets omitted)). If there is any doubt as to whether removal is proper, remand must be ordered. Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988). "The party seeking removal bears the burden of establishing federal jurisdiction." Id.

## III.

## RELEVANT ALLEGATIONS IN THE PLEADINGS

Plaintiffs' Complaint alleges four causes of action under the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1791, *et seq.*,[1] and one cause of action under the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-12, arising out of their September 3, 2022 purchase of a 2022 Chevrolet Silverado 1500 (the "Subject Vehicle"). (Dkt. 1-1 at 12-17.) Plaintiffs allege that they are residents of the State of California. (Id. at 12.) Plaintiffs further allege that Defendant is a corporation organized under the laws of Delaware and registered to conduct business in California. (Id.)

Plaintiffs allege that during their ownership, "the Subject Vehicle manifested defects covered by Defendant's express written warranties" including, but not

---

[1] Specifically, Plaintiffs allege causes of action for violations of California Civil Code §§ 1793.2(d), 1793.2(b), 1793.2(a)(3), 1791.1, and 1794. (Dkt. 1-1 at 13-16.)

3

limited to, "infotainment and structural defects." (Id. at 13.) Plaintiffs further allege that they "delivered Subject Vehicle to Defendant and/or its authorized service and repair facilities for diagnosis and repair of the defects." (Id.) Plaintiffs allege that "Defendant and/or its authorized service and repair facilities failed to service or repair the Subject Vehicle to conform with the applicable express warranties after a reasonable number of opportunities to do so." (Id. at 14.)

Plaintiffs seek actual, equitable, statutory, incidental, and consequential damages. (Id. at 17-18.) Plaintiffs allege that Defendant's conduct was willful and therefore seek civil penalties of up to two times the amount of actual damages. (Id. at 14-15, 17.) Finally, Plaintiffs seek attorneys' fees and costs, prejudgment interest, and other relief as the Court may deem proper. (Id. at 18.)

Plaintiffs' FAC is nearly identical to the Complaint in all relevant aspects, but drops Montebello Auto Group LLC as a defendant and adds two causes of action. Specifically, the FAC alleges four causes of action under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791, et seq.,[2] a cause of action under the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-12, a cause of action under the Uniform Commercial Code, and a cause of action under the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq., arising out of their purchase of the Subject Vehicle. (Dkt. 1-2 at 3-11.) Plaintiffs again allege that they are residents of the State of California. (Id. at 3.) Plaintiffs again allege that Defendant is a corporation organized under the laws of Delaware and registered to conduct business in California. (Id.)

Plaintiffs again allege that during their ownership, "the Subject Vehicle manifested defects covered by Defendant's express written warranties" including, but not limited to, "infotainment and structural defects." (Id. at 4.) Plaintiffs again

---

[2] Specifically, Plaintiffs allege causes of action for violations of California Civil Code §§ 1793.2(d), 1793.2(b), 1793.2(a)(3), 1791.1, and 1794. (Dkt. 1-2 at 3-6.)

allege that they "delivered Subject Vehicle to Defendant and/or authorized service and repair facilities for diagnosis and repair of the defects." (Id.) Plaintiffs again allege that "Defendant and/or its authorized service and repair facilities failed to service or repair Subject Vehicle to conform with the applicable express warranties after a reasonable number of opportunities to do so." (Id.)

Plaintiffs again seek actual, equitable, statutory, incidental, and consequential damages. (Id. at 11-12.) Plaintiffs again allege that Defendant's conduct was willful and therefore seek civil penalties of up to two times the amount of actual damages. (Id. at 4-6, 12.) Finally, Plaintiffs again seek attorneys' fees and costs, prejudgment interest, and other relief as the Court may deem proper. (Id. at 12.)

## IV.

## DEFENDANT'S NOTICE OF REMOVAL

Defendant removed the action based on diversity jurisdiction under 28 U.S.C. § 1332 and 1446. (Dkt. 1 at 1.) Defendant points to the allegation in the FAC that Plaintiffs are residents of California. (Id. at 3.) Defendant then states that its "preliminary investigation also concluded that Plaintiffs resided in California when they purchased the [S]ubject [V]ehicle, and on other occasions, establishing a plausible basis for intent to remain in California thus providing a plausible basis for citizenship." (Id.) Defendant states that it is a Delaware corporation with its principal place of business in Michigan, and therefore is a citizen of both Delaware and Michigan for purposes of jurisdiction. (Id. at 3-4.)

With regard to the amount in controversy, Defendant points to the language in the FAC seeking rescission of the contract, damages under the California Commercial Code, civil penalties in the amount of two times Plaintiffs' actual damages, consequential and incidental damages, attorneys' fees, prejudgment interest, and other relief as the Court may deem proper. (Id. at 4.) Defendant explains that under the Song-Beverly Consumer Warranty Act, a plaintiff's actual

damages for breach of warranty are an amount equal to the actual price paid or payable by the buyer less applicable offsets. (Id. (citing Cal. Civ. Code §§ 1793.2(d)(2)(B), 1794(b)).) Defendant estimates the purchase price for the Subject Vehicle to be $76,678.52.[3] (Id. at 5.) Defendant further estimates $53,356.77 in total deductions including estimates of mileage offset, third-party service contracts, manufacturer's rebate, and negative equity. (Id.) Thus, Defendant states that its preliminary investigation "yield[ed] a plausible estimate of actual damages of $23,321.75." (Id.)

Defendant states that its "preliminary investigation into the vehicle repair history and related case history revealed that Plaintiffs are more likely than not to actually seek civil penalties in this matter, and it would thus be reasonable to include a meaningful amount for civil penalties, tied to the actual damages calculated." (Id.) Defendant further states that based on its "prior experience in similar matters, a reasonable estimate of Plaintiffs' attorneys' fees accumulated up to this point in litigation is $5,000." (Id. at 6.) Additionally, Defendant's "assessment is that this case is not likely to resolve and conservatively including fees from work up for even just 6 months post-removal, the amount in controversy more than exceeds the jurisdictional threshold." (Id.) "Considering the combination of actual damages, civil penalties, past, and conservatively calculated future attorney fees," Defendant contends that "the amount in controversy meaningfully exceeds $75,000." (Id.)

\\

\\

---

[3] The Complaint and FAC state that the Subject Vehicle is a 2022 Chevrolet Silverado 1500. (Dkt. 1-1 at 1; Dkt. 1-2 at 1.) However, Defendant's Notice of Removal states that the Subject Vehicle is a 2022 Chevrolet Equinox. (Dkt. 1 at 5.) Because Defendant's Opposition identifies that the Subject Vehicle is a 2022 Chevrolet Silverado, the Court assumes the reference to a Chevrolet Equinox in the Notice of Removal was a clerical error. (Dkt. 14 at 12.)

# V.

# DISCUSSION

Plaintiffs contend that Defendant's Notice of Removal was untimely because the basis for removal was apparent on the face of the Complaint. (Dkt. 13 at 6-7.) Additionally, Plaintiffs contend that Defendant failed to carry its burden on removal of establishing subject matter jurisdiction. (Id. at 14-18.) By contrast, Defendant contends that neither diversity of citizenship nor the amount in controversy were sufficiently clear from the face of the Complaint and therefore Defendant had no duty to remove the action. (Dkt. 14 at 10-14.) Thus, the resolution of Plaintiffs' Motion to Remand turns on whether the grounds for removal were sufficiently clear from the face of the Complaint, and if not, whether Defendant carried its burden on removal to establish subject matter jurisdiction.

For the reasons set forth below, the Court concludes that the grounds for removal were not sufficiently clear from the face of the Complaint and the Notice of Removal was therefore timely. The Court also concludes that Defendant met its burden on removal of establishing subject matter jurisdiction. Therefore, Plaintiffs' Motion to Remand is DENIED.

**A.  The Grounds For Removal Were Not "Set Forth" On The Face Of Plaintiffs' Complaint.**

The Ninth Circuit has explained that there are three pathways for removal of an action from state court. See Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1124 (9th Cir. 2013). The first two pathways are contained in 28 U.S.C. § 1446(b) and impose 30-day deadlines for removal. See Dietrich v. Boeing Co., 14 F.4th 1089, 1093 (9th Cir. 2021). The third pathway is based on reading 28 U.S.C. § 1446 together with 28 U.S.C. § 1441 and permits removal up to one year from the filing of the complaint, but this pathway only applies if the first two do not. See Roth, 720 F.3d at 1125-26.

The first pathway is set forth by Section 1446(b)(1) and states that "[t]he

notice of removal of a civil action or proceeding <u>shall be filed within 30 days</u> after the receipt by the defendant, through service or otherwise, of a copy of <u>the initial pleading setting forth the claim for relief upon which such action or proceeding is based</u>, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1) (emphasis added). The second pathway is set forth by Section 1446(b)(3) and states in relevant part that "if the case stated by the initial pleading is not removable, a notice of removal may be filed <u>within thirty days</u> after receipt by the defendant, through service or otherwise, of a copy <u>of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable</u>." 28 U.S.C. § 1446(b)(3) (emphasis added).

  The third pathway is based on the interaction of Section 1446 with Section 1441. See <u>Roth</u>, 720 F.3d at 1125. Section 1441(a) states that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Ninth Circuit has explained "that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." <u>Roth</u>, 720 F.3d at 1125. Thus, "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable." <u>Id.</u> at 1123. The only time limit on removal under this third pathway is that a defendant must file the notice of removal within one year of the filing of the complaint. <u>Id.</u> at 1126 (citing 28 U.S.C. § 1446(c)(1) for the one-year time limit).

Here, Defendant removed this action pursuant to the third pathway set forth above after conducting "a preliminary investigation [which] determined that Plaintiffs' citizenship and the reasonable, non-speculative estimation of the amount in controversy placed at issue through Plaintiffs' allegations plausibly g[a]ve rise to subject matter jurisdiction." (Dkt. 1 at 2.) Defendant contends that it timely removed the action because neither of the 30-day deadlines for removal were triggered and it ultimately removed the action less than one year after the filing of the Complaint. (Id. at 10.) By contrast, Plaintiffs contend that Defendant's removal was untimely because service of the Complaint on February 21, 2025 triggered the 30-day deadline to remove the action under the first pathway, 28 U.S.C. § 1446(b)(1). (Dkt. 13 at 6-7.) Specifically, Plaintiffs assert that the 30-day deadline to remove was triggered under Section 1446(b)(1) because the Complaint alleges a Magnuson-Moss Warranty Act claim, providing the Court federal question jurisdiction, and because the threshold requirements for diversity jurisdiction were ascertainable from the face of the Complaint. (Id. at 10-16.) As explained below, the Court concludes that the grounds for removal were not set forth on the face of the Complaint.

### 1. **Plaintiffs' Magnuson-Moss Warranty Claim Did Not Independently Establish Federal Question Jurisdiction.**

First, Plaintiffs contend that the grounds for removal were set forth on the face of the Complaint because it alleges an "independent claim under the Federal Magnuson-Moss Warranty Act, [which] formed the bases of federal question jurisdiction when initially filed on February 13, 2025." (Id. at 10.) However, the Magnuson-Moss Warranty Act states that "[n]o claim shall be cognizable . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B). Thus, "[i]n order [to] file a claim in district court under the Magnuson-Moss Warranty Act, the amount in controversy must be at least

$50,000." Guerrero v. Mercedes-Benz USA, LLC, 2023 WL 4085975, at *1 (C.D. Cal. June 20, 2023). "There is nothing in the text of the Magnuson-Moss Act that would indicate that the amount in controversy for that statute is assessed any differently than the diversity jurisdiction requirement found in 28 U.S.C. § 1332." Romo v. FFG Ins. Co., 397 F. Supp. 2d 1237, 1240 (C.D. Cal. 2005). Therefore, Plaintiffs' Magnuson-Moss Warranty Act claim did not independently provide grounds for removal based on federal question jurisdiction because the Complaint still needed to sufficiently allege an amount in controversy of $50,000. As explained below, the Complaint is indeterminate as to the amount in controversy.

### 2. Plaintiffs' Complaint Is Indeterminate As To The Amount In Controversy.

As set forth above, the federal Magnuson-Moss Warranty Act requires an amount in controversy of at least $50,000. See 15 U.S.C. § 2310(d)(3)(B). And of course, diversity jurisdiction requires an amount in controversy that exceeds $75,000. See 28 U.S.C. § 1332(a). Plaintiffs contend that even though the Complaint does not allege an amount in controversy, Defendant should have been able to determine the amount in controversy from the face of the Complaint because "the make, model, year, and VIN[] were included within the factual bases alleged within the Complaint." (Dkt. 13 at 12.)

However, in Harris v. Bankers Life & Cas. Co., the plaintiff argued that the defendant "should have looked in its files within the first thirty days" to discover that a named defendant whose presence in the suit frustrated complete diversity of citizenship had died, and therefore should have recognized that the case was immediately removable under 28 U.S.C. § 1332(a). Harris, 425 F.3d at 696. The Ninth Circuit rejected this argument in favor of "a bright-line approach" that relies on "objective analysis of the pleadings" instead of asking "whether [a] defendant had subjective knowledge, or whether [a] defendant conducted [a] sufficient inquiry." Id. at 697. Thus, the Ninth Circuit held that materials outside the

complaint, even in the defendant's own files, did not trigger the 30-day deadline to remove under the first pathway (28 U.S.C. § 1446(b)(1)).  See id.

The Ninth Circuit reinforced the holding and rationale from Harris in Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136 (2013).  In Kuxhausen, the Ninth Circuit held that the amount in controversy for removal under the Class Action Fairness Act was not sufficiently clear from the face of the complaint because the complaint did not allege, "even as an approximation," the value of the other class members' vehicle financing contracts, and instead, alleged only the value of the named class representative's vehicle financing contract.  See Kuxhausen, 707 F.3d at 1140-41.  The Ninth Circuit relied on Harris to specifically reject the argument "that BMW should have consulted its business records to identify a representative valuation."  Id. at 1141.  Indeed, the Ninth Circuit explained "that BMW was not obligated to supply information which Kuxhausen had omitted."  Id.  Thus, the Ninth Circuit concluded that because the complaint did not allege the amount demanded by each of the putative class members, "it fell short of triggering the removal clock under Section 1446(b)."  Id.

The Court concludes that Harris and Kuxhausen are controlling here.  Plaintiffs' Complaint does not allege the amount in controversy, even by approximation.  (Dkt. 1-1 at 12.)  Instead, the Complaint simply identifies the make, model, year, and VIN of the Subject Vehicle.  (Id.)  The Ninth Circuit has clearly and repeatedly held that this is insufficient to start the removal clock under Section 1446(b) and that Defendant was not required to research its internal files to determine the value of the vehicle contract at issue.  See Harris, 425 F.3d at 696-97; Kuxhausen, 707 F.3d at 1140-41; Crystal Fortune v. Gen. Motors, LLC, et al., 2025 WL 2866659, at *3 (C.D. Cal. Oct. 7, 2025) ("In this case, Plaintiff's Complaint does not allege a specific amount in controversy, nor does it allege specific facts that would allow Defendant to make simple calculations to ascertain the amount in controversy issue (like the purchase price of the Vehicle).  Under such

11

circumstances and in accordance with Harris and Kuxhausen (and numerous district court opinions within the Ninth Circuit), the Court concludes that service of the summons and complaint did not trigger Defendant's 30-day time period for removal.").

Plaintiffs contend that the Complaint actually does allege the amount in controversy because "both the caption page and accompanying Civil Case Cover Sheet expressly indicated that the claim was being brought under the state court's unlimited jurisdiction (seeking damages above $35,000.00)." (Dkt. 13 at 8.) However, the caption page and Civil Case Cover Sheet merely indicate that the "Amount demanded exceeds $35,000." (Dkt. 1-1 at 4.) There is no indication of whether the amount demanded is the total amount in controversy, in which case the amount would be too low, or whether this is the amount demanded for actual damages. See Longoria v. Ford Motor Co., 2022 WL 16961482, at *3 (C.D. Cal. Nov. 16, 2022) ("Yet the Civil Cover Sheet for Plaintiff's Complaint did not assert that his 'damages' exceed $25,000: it stated only that the 'amount demanded exceeds $25,000,' and did not specify what this amount includes."). Thus, the Court concludes that the caption page and Civil Case Cover Sheet were insufficient to trigger Defendant's 30-day deadline for removal.[4] See, e.g., id.; accord Cuevas v. Ford Motor Co., 2022 WL 1487178, at *3 (C.D. Cal. May 11, 2022); Carillo v. FCA USA, LLC, 546 F. Supp. 3d 995, 1000–01 (C.D. Cal. 2021). Accordingly, the Court concludes that Defendant's Notice of Removal was timely.

---

[4] To trigger the 30-day deadline, all that Plaintiffs needed to do was allege the approximate value of the sales contract and facts necessary to calculate the statutory use offset. See, e.g., Larios v. Nissan N. Am., Inc., 2025 WL 2402250, at *4-6 (C.D. Cal. Aug. 16, 2025) (holding that plaintiff sufficiently alleged the amount in controversy to trigger the 30-day deadline for removal because the complaint alleged the approximate value of the sales contract and facts necessary to calculate the statutory use offset).

### 2. Plaintiffs' Complaint Is Also Indeterminate As To Citizenship.

Even if the Complaint had sufficiently alleged the amount in controversy, which it did not, the Court would still conclude that Defendant's 30-day deadline for removal was not triggered under the first pathway because the Complaint is also indeterminate as to Plaintiffs' citizenship. As set forth above, Plaintiffs' Complaint only alleges that "Plaintiffs are, and at all times relevant herein [were], [] resident[s] of Whittier, CA." (Dkt. 1-1 at 12.) However, "the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not residency." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). Accordingly, a "natural person's state citizenship is . . . determined by [their] state of domicile, not [their] state of residence." Id. A person is domiciled in a state where they live and intend to remain permanently. See id. "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id.; see also Weible v. United States, 244 F.2d 158, 163 (9th Cir.1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile.").

Therefore, the Court concludes that Plaintiffs' bare allegation of residency was insufficient to trigger Defendant's 30-day deadline for removal on the basis of complete diversity under 28 U.S.C. § 1332.[5] See, e.g., Crisp-Stoot v. Wal-Mart Stores, Inc., 2019 WL 1307735, at *2 (C.D. Cal. Mar. 22, 2019) ("[A]n allegation that an individual is a resident of a state is not enough to show that she is a citizen of that state. And because the thirty-day removal clock does not start running until the defendant receives a pleading or other paper that affirmatively reveals that the case

---

[5] Of course, Plaintiffs could have easily put Defendant on notice of the existence of complete diversity by simply alleging their citizenship.

is removable, with no need for further investigation, this Court has previously held that information in pleadings or other papers about residence alone is not enough to start the clock." (citations omitted)); accord Brady v. Kohl's, Inc., 2022 WL 4104627, at *2-3 (C.D. Cal. Sept. 7, 2022); Cioffi v. Solomon, 2014 WL 6679555, at *2 (N.D. Cal. Nov. 21, 2014); Tandoc v. U.S. Renal Care, Inc., 2025 WL 1397193, at *3 (C.D. Cal. May 14, 2025); Brinkley v. Monterey Fin. Servs., Inc., 2016 WL 4886934, at *3 (S.D. Cal. Sept. 15, 2016).

In sum, the Court concludes that Defendant's 30-day deadline for removal was not triggered under the first pathway because the Complaint is indeterminate as to both the amount in controversy and Plaintiffs' citizenship.[6] Thus, the Court concludes that Defendant's Notice of Removal was timely. Accordingly, the Court now turns to the question of whether Defendant has met its burden on removal to establish subject matter jurisdiction.

**B.     Defendant Has Met Its Burden Of Establishing That The Amount In Controversy Exceeds $50,000.**

Under 28 U.S.C. § 1446(a), a defendant's notice of removal must be signed pursuant to Federal Rule of Civil Procedure 11 and include "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant." The Supreme Court has explained that where removal is based on diversity jurisdiction, "a defendant's notice of removal

---

[6] Plaintiffs do not contend that Defendant's 30-day deadline for removal was triggered under the second pathway by service of an amended pleading, motion, order, or other paper. (Dkt. 13 at 14.) Therefore, the Court need not address the second pathway. However, the Court notes that the FAC could not have triggered the second pathway because the jurisdictional allegations in the FAC were identical to those in the Complaint. (Compare Dkt. 1-1 at 12-14, with Dkt. 1-2 at 3-5); see Harris, 425 F.3d at 694 (explaining that the second pathway "applies when the case stated by the initial pleading is not removable," but is later "rendered removable by virtue of a change in the parties or other circumstance revealed in a newly-filed paper" (internal quotation marks omitted)).

need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC, v. Owens, 574 U.S. 81, 89 (2014). "Evidence establishing the amount is controversy is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." Id.

Plaintiffs argue in their Motion to Remand that Defendant has failed to meet its "heavy burden" of establishing that the amount in controversy exceeds $50,000. (Dkt. 13 at 14.) Specifically, Plaintiffs contend that Defendant merely estimated the Subject Vehicle's value to yield estimated actual damages of $23,321.75 instead of producing any evidence to show that Plaintiffs' actual damages approach or exceed $50,000. (Id. at 14-15.) Plaintiffs also contend that Defendant ignored the statutory mileage offset. (Id. at 15.) Because Plaintiffs contend that Defendant failed to provide competent evidence of actual damages, Plaintiffs assert that any projection of civil penalties is likewise conjectural. (Id.)

As an initial matter, the Court concludes that Defendant's Notice of Removal plausibly alleges that the amount in controversy exceeds the jurisdictional threshold. Specifically, the Notice of Removal states that Defendant has estimated the purchase price for the Subject Vehicle to be $76,678.52. (Dkt. 1 at 5.) The Notice of Removal further states that Defendant's "preliminary investigation also estimated $53,356.77 in total deductions including estimates of statutorily required deductions for mileage offset, third-party service contracts, manufacturer's rebate, and negative equity." (Id.) Thus, the Notice of Removal states that Defendant's preliminary investigation "yields a plausible estimate of actual damages of $23,321.75." (Id.) The Notice of Removal further states that it would be "reasonable to include a meaningful amount for civil penalties, tied to the actual damages calculated." (Id.) The Notice of Removal states that based on Defendant's "prior experience in similar matters, a reasonable estimate of Plaintiffs' attorneys' fees accumulated up to this point in litigation is $5,000." (Id. at 6.) Finally, the Notice of Removal states that

15

"[c]onsidering the combination of actual damages, civil penalties, past, and conservatively calculated future attorney's fees, the amount in controversy meaningfully exceeds $75,000." (Id.)

Plaintiffs offer no reason to doubt Defendant's estimates in the Notice of Removal, but simply contends that the allegations are conclusory and speculative. (Dkt. 13 at 15.) However, Defendant's estimates are neither conclusory, nor speculative. To the contrary, the Notice of Removal states that Defendant has conducted a preliminary investigation and begins with an estimate of the purchase price, then provides an estimate of the statutory mileage offset, and then provides an estimate of actual damages. (Dkt. 1 at 5.) The Notice of Removal explains the basis of these estimates and the math is apparent for how Defendant reached the actual damages calculation. (Id.) Plaintiffs' only other argument is that Defendant's estimate of actual damages "ignores the statutory mileage offset." (Dkt. 13 at 15.) But this contention is simply incorrect because Defendant expressly estimated total deductions of $53,356.77, which included an estimate of the statutory mileage offset. (Dkt. 1 at 5.) Therefore, the allegations in the Notice of Removal plausibly allege that the amount in controversy exceeds the jurisdictional threshold.[7] See, e.g., Schneider v. Ford Motor Co., 756 F. App'x 699, 700 (9th Cir. 2018) (holding that the notice of removal must include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold).

Although Plaintiffs' Motion to Remand does not contest Defendant's allegations of citizenship, the Court also concludes that the Notice of Removal plausibly alleges diversity of citizenship. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (noting that courts "have an independent obligation to determine

---

[7] Indeed, Plaintiffs affirmatively argue that the amount in controversy exceeded the jurisdictional threshold and was apparent from the face of the Complaint. (Dkt. 13 at 11 ("[I]t is impossible to believe that Defendant could not ascertain the amount in controversy exceeded $50,000.00 based on the face of the complaint alone.").)

whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"). In the Notice of Removal, Defendant points to Plaintiffs' allegations in their Complaint that they are residents of California. (Dkt. 1 at 3.) Defendant also alleges that its preliminary investigation concluded that Plaintiffs resided in California when they purchased the Subject Vehicle, and on other occasions, establishing a plausible basis for intent to remain in California and thus providing a plausible basis for citizenship. (Id.) Defendant further alleges that it is a citizen of Delaware and Michigan for purposes of jurisdiction. (Id. at 3-4.) Accordingly, the Notice of Removal plausibly alleges complete diversity.[8]

        Finally, the Court also concludes that Defendant has presented sufficient evidence with its Opposition to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. Specifically, Defendant included with its Opposition the declaration of Karyn L. Ihara (the "Ihara Declaration"). (Dkt. 14-1.) The Ihara Declaration includes the purchase agreement, the Subject Vehicle repair history, and Plaintiffs' loan payoff history. (Id. at 2; Dkts. 14-2, 14-3, 14-4.) The Ihara Declaration explains that based on a review of Defendant's records, the Subject Vehicle was presented for repair at least 11 times and November 22, 2023, appears to be the first potentially relevant presentation, when the Subject Vehicle had 15,067 miles on the odometer. (Dkt. 14-1 at 2.) Defendant's Opposition explains the calculation for the statutory mileage offset based on the evidence contained within the Ihara Declaration and estimates actual damages of $32,312.58. (Dkt. 14 at 25.) Defendant's Opposition further explains that once actual damages are determined, it is appropriate to calculate civil penalties

---

[8] Indeed, Plaintiffs affirmatively argue that complete diversity exists and was apparent from the face of the Complaint. (Dkt. 15 at 5 ("Defendant incorrectly contends that removal was not triggered by the Complaint because it purportedly fails to establish the amount in controversy and Plaintiffs' state of citizenship. The Court should not be misled by Defendant's arguments, which are on their face misleading and unpersuasive." (citation omitted)).)

as two times the actual damages, which in this case yields total damages of $96,937.74. (Id. at 26.) Finally, Defendant's Opposition explains that Defendant expects Plaintiffs' counsel to demand at least $15,000 in attorneys' fees based on settlement negotiations to date and prior experience with counsel, as well as knowledge of counsel's billing rate. (Id.)

Plaintiffs contend that "[b]ecause Defendant has provided no competent evidence of actual damages, any projection of civil penalties is likewise conjectural." (Dkt. 13 at 15.) However, as set forth above, Defendant did provide competent evidence of actual damages with its Opposition. (Dkts. 14-1, 14-2, 14-3, 14-4.) Plaintiffs had the opportunity to file a reply in response to the Opposition, but declined to do so. Because Defendant did provide competent evidence of actual damages, it is appropriate to "consider[] civil penalties when deciding whether the amount-in-controversy requirement has been satisfied." Wang v. FCA US LLC, 2025 WL 1218745, at *2 (C.D. Cal. Apr. 28, 2025). It is also appropriate to consider Plaintiffs' demand for attorneys' fees given that Defendant has provided specific facts to support the estimate.[9] See id. Thus, the Court concludes that Defendant has carried its burden to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. Indeed, Plaintiffs declined to provide any contrary evidence or dispute Defendant's evidence.

In sum, Defendant has met its burden of establishing that the amount in controversy exceeds $50,000. First, the Notice of Removal plausibly alleges that the amount in controversy exceeds the jurisdictional threshold and that there is complete diversity amongst the parties. Second, in response to Plaintiffs' challenge

---

[9] Plaintiffs contend that Defendant's allegation of likely attorneys' fees in the Notice of Removal is speculative and lacking evidentiary support. (Dkt. 13 at 16.) However, Defendant has now provided evidence to support its estimate of likely attorneys' fees in the Opposition. (Dkt. 14 at 26.)

18

to Defendant's allegations related to the amount in controversy, Defendant has presented sufficient evidence to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.

## VI.
## ORDER

Consistent with the foregoing, Plaintiffs' Motion to Remand is DENIED. (Dkt. 13.) The Court will also issue a separate scheduling order.

IT IS SO ORDERED.

DATED: November 5, 2025

                                    *Joel Richlin*
                                    HON. A. JOEL RICHLIN
                                    UNITED STATES MAGISTRATE JUDGE